IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

SAMUEL R. HARVEY,

    Defendant.

Case No. 2:20-cr-202
JUDGE EDMUND A. SARGUS, JR.

**OPINION AND ORDER ON THE PARTIES' MOTIONS *IN LIMINE***

This matter is before the Court on (1) Defendant Samuel Harvey's Motion *in Limine*, (ECF No. 28), which Plaintiff United States of America (the "Government") does not oppose, (ECF No. 40), and (2) the Government's Motion *in Limine*, (ECF No. 38), to which Defendant has responded (ECF No. 39). For the reasons stated herein, the Court **GRANTS** both motions. (ECF Nos. 28, 38.)

    **I. General Background**

On November 12, 2020, Defendant was indicted for "knowingly" aiming the beam of a laser pointer at an Ohio State Highway Patrol aircraft and its corresponding flight path in violation of 18 U.S.C. § 39A. (Indictment, ECF No. 3.)

Defendant's federal indictment was predicated on events that allegedly occurred on or about the night of June 3, 2020. (*Id.*) Around that time, demonstrations in response to the murder of George Floyd were taking place across the City of Columbus. To monitor those demonstrations, the Ohio State Highway Patrol dispatched a surveillance aircraft. The Government alleges that, amidst this surveillance operation, that aircraft was "repeatedly struck by the light from a laser

1

pointer" located on the ground (the "Laser-Strike Incident"). (Resp. to Def.'s Mot., ECF No. 40.) Immediately thereafter, one of the troopers piloting the aircraft

> used instruments to determine the address from which the laser was deployed. He saw a person run from the house and drive away in a vehicle. The trooper relayed the vehicle's location to the Columbus police, and ground units performed a traffic stop. [Defendant Harvey] was the driver, and in the car police officers found a backpack containing gloves, ski goggles, a pocketknife, medical equipment, and other items.

(Pl.'s Resp., ECF No. 40); (*see also* Def.'s Mot., ECF No. 28.)

Defendant was arrested by the Columbus Police shortly after the traffic stop. On June 4, 2020, he was charged with one count of violating R.C. § 2909.081 in state municipal court. (Def.'s Ex. 1, ECF No. 39-1 at PageID #129.) On June 19, 2020, a state grand jury returned a "no bill" of indictment on Defendant's state law charge. (Def.'s Ex. 1, ECF No. 39-1 at PageID #131.) Several months later, he was federally indicted in this case. (Indictment, ECF No. 3.)

## II. Defendant's Motion in *Limine*

On June 9, 2020, Columbus Police Detective Roger Jacobs issued a report that documented his account of Defendant's June 3 arrest and subsequent interview (the "Jacobs Report"). (Def.'s Ex. C, ECF No. 28-3.) Therein, Detective Jacobs referred to the backpack that police seized from Defendant's car as a "riot bag," which he described as "a bag that some demonstrators keep at hand to combat injuries and other contact with police personnel during the demonstrations." (*Id.*)

Defendant, citing the Jacobs Report, moves *in limine* under Federal Rules of Evidence 401 and 403 to prevent the Government from permitting any of its witnesses to refer to the backpack seized from Defendant's vehicle as a "riot bag." (Def.'s Mot., ECF No. 28.) The Government "does not oppose [Defendant's] motion, on the understanding that the motion does not seek to prohibit the admission of evidence of the seizure of the bag and its contents, but only the use of

the phrase 'riot bag.'" (Resp., ECF No. 40.) It thus pledges to "instruct its witnesses not to use the phrase 'riot bag' to describe the seized backpack and its contents." (*Id.*)

The Court's reading of Defendant's motion aligns with the Government's. That is, Defendant does not ask this Court to do anything other than prohibit Government witnesses from characterizing the backpack seized from his vehicle as a "riot bag." Thus, in light of the parties' agreement, the Court **GRANTS** Defendant's Motion *in Limine*. (ECF No. 28.)

### III. The Government's Motion *in Limine*

#### A. Defendant's Statements to Columbus Police

On the night of his arrest, the Government alleges that Defendant participated in a "voluntary interview" with a Columbus police detective. (Pl.'s Mot., ECF No. 38 at PageID #107.) The Government states that

> [d]uring that interview, which was audio recorded, the detective asked, "Was there any point in time that you were outside the house with the laser tonight, that you can think of?" Mr. Harvey replied, "No, no. I was in my house. Both in my living room and upstairs in my bedroom." Mr. Harvey also described his laser pointer as something that he "had never taken, like, out–outside of the home."

(*Id.* at PageID# 107-08.)

#### B. Defendant's Response Letter to the FAA

One month after Defendant's arrest, the Federal Aviation Administration (FAA) notified him by letter that it had opened an investigation into the Laster-Strike Incident (the "FAA Letter"). (Def.'s Ex. 2, ECF No. 39-2.) The letter gave Defendant ten days from its receipt to "discuss" the matter with the FAA so that his version of events could be considered in its investigatory report. (*Id.*)

On August 7, 2020, Defendant's counsel responded to the FAA through a letter of his own (the "Response Letter"). (Def.'s Ex. 1, ECF No. 39-1.) Therein, Defendant's counsel (1) summarized Defendant's background; (2) offered Defendant's rendition of the events surrounding

the Laser-Strike Incident; and (3) estimated the monetary sanction that Defendant's alleged conduct warranted based on the FAA's own sanction manual, FAA Order 2150.3d CHG3. (*Id.*) Part of the Response Letter's account of the Laser-Strike incident noted that, prior to his arrest, Defendant had taken the laser pointer outside and "aimlessly pointed" it "into the dark sky," which was something he had done "countless times on camping trips without incident." (*Id.*) On the final page of the Response Letter, Defendant certified by signature that he had "read and approved [the] submission" and that its contents were accurate. (*Id.* at PageID #124.)

### C. The Government's Motion and Defendant's Response

The Government notes that several of the statements in the Response Letter are inconsistent with various statements Defendant made to the Columbus police on the night of his arrest. (Pl.'s Mot., ECF No. 38 at PageID #108.) Accordingly, it now moves *in limine* under Federal Rule of Evidence 801(d)(2) to have those statements admitted.[1] (*Id.*) Defendant responds that it has "no objection to the government's motion" so long as the entirety of Defendant's Response Letter is admitted pursuant to Federal Rule of Evidence 106. (Def.'s Resp., ECF No. 39.)

### D. Analysis

#### 1. Rules 401 and 403

To be admissible, all evidence, at base, must (1) be relevant and (2) possess a "probative value" that is not "substantially outweighed" by a corresponding risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 401, 403. Evidence is "relevant" under Rule 401 if (1) "it has

---

[1] The Government does not state the purpose for which it seeks to introduce these statements. As set forth below, the Court finds them relevant to issue of whether Defendant "aimed the beam of a laser pointer at an aircraft" (or its corresponding flight path). Thus, to that extent, they may be used substantively. *See* Fed. R. Evid. 801(d)(2). The Court makes no finding as to whether the statements can be used to demonstrate any other element of 18 U.S.C. § 39A.

4

any tendency to make a fact more or less probable than it would be without the evidence" and (2) it offers a "fact . . . of consequence in determining the action."

For the Government to prevail at trial, it will need to prove beyond a reasonable doubt that Defendant "knowingly aim[ed] the beam of a laser pointer at an aircraft in the special jurisdiction of the United States, or at the flight path of such an aircraft." 18 U.S.C. § 39A. Here, the "inconsistent" Response Letter statements that the Government seeks to produce clearly speak to his alleged "aiming" of the laser pointer at the Ohio State Highway Patrol aircraft. (Indictment, ECF No. 3.) To that extent, they are both relevant and probative under Rules 401 and 403. Fed. R. Evid. 401.

Defendant argues that, if the "inconsistent" statements in the Response Letter are introduced without any further context, "the jurors would be left wondering why the statements were made." (Def.'s Resp., ECF No. 39-1.) Perhaps so. But that is not, in and of itself, enough to "substantially" mislead the jury or cause them to confuse the issues. In any event, as discussed below, Defendant will be permitted to explain the context in which the Response Letter statements were made. To that end, the statements that the Government seeks to produce do not present a risk of "unfair prejudice" that would "substantially outweigh" their probative value. Fed. R. Evid. 403. Nor do they seriously implicate any of the other risk factors noted in Rule 403. *Id.* Thus, they are admissible under Rules 401 and 403.

 2. **Rule 802**

Federal Rule of Evidence 802 generally prohibits "hearsay" statements from admission subject to various exceptions. Federal Rule of Evidence 801 defines "hearsay" as any "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." It also contains a list

of specific statements that do not constitute "hearsay." Fed. R. Evid. 801. One of those statements is an "opposing party statement," which consists of any statement that "is offered against an opposing party" and:

> (A) was made by the party in an individual or representative capacity;
> (B) is one the party manifested that it adopted or believed to be true;
> (C) was made by a person whom the party authorized to make a statement on the subject;
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it lasted; or
> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2)(A)-(E).

Here, the statements in the Response Letter that the Government seeks to produce were written by Defendant's counsel—not Defendant. (Def.'s Ex. 1, ECF No. 39-1.) Nevertheless, Defendant attested by signature at the bottom of the letter that he had "read and approved" its contents and "certif[ied]" them to be accurate. (*Id.*) Accordingly, by signing the Response Letter, Defendant both "authorized" the letter to be sent as written and "adopted" its factual statements. *See* Fed. R. Evid 801(d)(2)(B)-(C). Moreover, as the Government notes, Defendant's counsel—who identifies himself as such and refers to Defendant as his client within the Response Letter—was clearly operating as Defendant's "agent" at the time the letter was written. (*See* ECF Nos. 38, 39-1.) Thus, the factual contents of the Response Letter do not constitute "hearsay," as they fall within the confines of Rule 801(d)(2)(B)-(D). *See Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986) (noting "the general rule that 'statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney'") (citation omitted)).

### 3. Rule 408

Federal Rule of Evidence 408 prohibits, inter alia, the introduction of a "prior inconsistent statement or contradiction" for impeachment purposes when that prior statement was "made during

6

compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority."

Here, Defendant's counsel sent the Response Letter to advocate for a specific monetary sanction for his client. (*See* Def.'s Ex. 1, ECF No. 39-1.) Nevertheless, as the Government notes, the Response Letter (1) is being offered in a criminal case, (2) relates to the FAA's "claim" against Defendant, and (3) was written in response to the FAA's "exercise" of its "regulatory, investigative, or investigative authority." (*See* Def.'s Ex. 2, ECF No. 39-2) (notifying Defendant that the Laser-Strike Incident was "under investigation by the [FAA]" and offering him an opportunity to "discuss" the matter with the agency). Thus, to the extent Rule 408 would otherwise apply, it does not bar the admission of the Response Letter's factual contents for impeachment purposes. *See* Fed. R. Evid. 408.

### 4. Rule 106

Defendant notes that he received that FAA Letter after the state grand jury "no-billed" his indictment in Franklin County Municipal Court but before he knew that the Federal Bureau of Investigation had opened an investigation into his conduct. (ECF No. 39.) Thus, he asserts that the Response Letter was written at a time when he "reasonably believed" that any fallout from the Laser-Strike Incident would be handled "in an administrative setting" that could only result in financial sanction. (*Id.*) He argues, accordingly, that, if the Government introduces only portions of the Response Letter (*i.e.*, Defendant's inconsistent statements), "the entirety of the letter and accompanying attachments as well as the FAA's letter initiating the dialogue" should be admitted under Federal Rule of Evidence 106. (Def.'s Resp., ECF No. 39 at PageID #119.)

Rule 106 provides that:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

Fed. R. Evid. 106.

Rule 106 is animated by two considerations. "The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial." Fed. R. Evid. 106 advisory committee's note. Here, Defendant does not attack the accuracy of the statements that the Government seeks to introduce. (ECF No. 39.) He only argues that, if those statements are admitted, the jury should know that they were made at a time when he believed he would not face any criminal liability. (*Id.*)

As noted above, it is unclear how the absence of that knowledge would "mislead" the jury in any material way (*i.e.*, regarding any element of the charge Defendant faces). Nevertheless, it stands to reason that, if introduced in a vacuum, a jury may construe the statements as having been made amidst the criminal inquiry that led to Defendant's federal indictment. Thus, to the extent that impression is manifested by the Government's use of certain portions of the Response Letter, Rule 106 permits Defendants to introduce other parts of the letter and its accompanying attachments to correct it. Accordingly, if need be, Defendant will be permitted to use other portions of the Response Letter to clarify its context, provided that those portions are otherwise admissible under the Federal Rules of Evidence.[2] *See, e.g., United States v. McQuarrie*, 817 Fed. Appx. 63, 78 (6th Cir. 2020) (reiterating that "the rule of completeness reflected in Rule 106 'covers an order

---

[2] Defendant's argument that the "entirety" of the Response Letter should be admitted in response to the Government's use of the document is overbroad, as some parts of the letter do not speak to the context in which it was written—namely, the portion regarding Defendant's upbringing. (*See* Def.'s Ex. 1, ECF No. 39-1 at PageID #120.) Accordingly, insofar as Rule 106 is concerned, Defendant may only use those parts of the Response Letter (or its attachments) that address the fact it was written in response to an FAA inquiry.

of proof problem; it is not designed to make something admissible that should be excluded'") (quoting *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982)).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** both Defendant's Motion *in Limine* and the Government's Motion *in limine*. (ECF Nos. 28, 38.) As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

**2/8/2022**                                   s/Edmund A. Sargus, Jr.
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                     **UNITED STATES DISTRICT JUDGE**